IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EUGENE L. NELSON,                :     CONSOLIDATED UNDER
                                 :     MDL 875
        Plaintiff,               :
                                 :
                                 :
        v.                       :
                                 :
                                 :
A-C PRODUCT LIABILITY TRUST,     :     E.D. PA CIVIL ACTION NO.
ET AL.,                          :     2:11-31119-ER
                                 :
        Defendants.              :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          February 2, 2016


        This case was transferred in January 2011 from the
United State District Court for the Northern District of Ohio to
the United States District Court for the Eastern District of
Pennsylvania, where it became part of the consolidated asbestos
products liability multidistrict litigation (MDL 875). The case
was assigned to the Court's maritime docket ("MARDOC").
Plaintiff Eugene Nelson ("Plaintiff" or "Mr. Nelson"), alleges
that he was exposed to asbestos while working aboard various
ships. Plaintiff asserts that he developed two asbestos-related
illnesses as a result of his exposure to asbestos aboard those
ships.

        For the reasons that follow, the Court will deny
Defendants' motion.

## I.   BACKGROUND

In 1994, Plaintiff brought claims for non-malignant asbestos-related disease against various defendants, including shipowners represented by Thompson Hine LLP ("Defendants" or the "Thompson Hine Shipowners"). By way of Order dated May 2, 1996, Judge Charles Weiner[1] dismissed those claims administratively, leaving open the possibility for the action to be pursued at a later, unspecified date.[2] Approximately eight years after he

---

[1]   Judge Weiner presided over MDL 875 from its inception in 1991 until his passing in 2005. In 2005, Judge James Giles was designated to preside over MDL 875, where he remained until his resignation from the bench in 2008. In October 2008, Judge Eduardo Robreno, the undersigned, was appointed to succeed Judge Giles, and he has presided over MDL 875 since that date.

[2]   On May 2, 1996, Judge Weiner administratively dismissed all pending MARDOC claims without prejudice, noting that the claimants had "provide[d] no real medical or exposure history," and had been unable to do so for months. In re Asbestos Prods. Liab. Litig. (No. VI), No. 2 MDL 875, 1996 WL 239863, at *1–2 (E.D. Pa. May 2, 1996). Judge Weiner also ordered that these "asymptomatic cases" could be activated if the plaintiffs began to suffer from an impairment and could show (1) "satisfactory evidence [of] an asbestos-related personal injury compensable under the law," and (2) "probative evidence of exposure" to a defendant's products. Id. at *5. On March 14, 1997, Judge Weiner applied that dismissal order to all future MARDOC cases that had not yet been filed. In 2002, the MDL Court ordered that administratively dismissed cases remain active for certain purposes (e.g., entertaining settlement motions and orders, motions for amendment to the pleadings, etc.), and in 2003, clarified that the administrative dismissals were "not intended to provide a basis for excluding the MARDOC claimants from participating in settlement programs or prepackaged bankruptcy programs[.]" In re Am. Capital Equip., 296 Fed. App'x 270, 272 (3d Cir. 2008) (quoting In re Asbestos Prods. Liab.

filed his asbestos action (and approximately six years after it was dismissed), in May of 2002, Plaintiff filed for bankruptcy pursuant to Chapter 7 of the bankruptcy code, without listing his asbestos claims as an asset in the bankruptcy filing. Approximately three months later, in August of 2002, the bankruptcy case was closed. Thereafter, in January of 2003, Plaintiff was diagnosed with asbestos-related cancer, giving rise to a claim for a malignant asbestos-related disease. On January 27, 2011 (approximately eight years after he was discharged from bankruptcy, and approximately seventeen years after Plaintiff first filed his asbestos action), the MDL Court reinstated Plaintiff's asbestos action, which had been dismissed by Judge Weiner in 1996. A summary of this timeline of events is as follows:

- 1994 - Asbestos action filed (non-malignancy claims)
- May 1996 - Asbestos action administratively dismissed
- May 2002 - Bankruptcy action filed
- August 2002 - Bankruptcy action closed
- January 2003 - Cancer diagnosis (malignancy claims)
- January 2011 - Asbestos action reinstated by MDL Court

The Thompson Hine Shipowners have moved for summary judgment, arguing that (1) Plaintiff's non-malignancy claims are barred by way of judicial estoppel because he failed to disclose

---

Litig. (No. VI), Order Granting Relief to MARDOC Claimants with Regard to Combustion Eng'g, Inc., No. 2 MDL 875 (E.D. Pa. Feb. 19, 2003)).

the asbestos action as an asset in his bankruptcy filing, and
(2) Plaintiff cannot pursue any of the asbestos claims in the
asbestos action (neither the initial non-malignancy claims nor
his post-petition malignancy claims) because the entire asbestos
action is now owned by the bankruptcy estate.

## II.  LEGAL STANDARD

### A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion
for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact." <u>Am. Eagle Outfitters v.
Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986)).
A fact is "material" if proof of its existence or non-existence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at
248.

In undertaking this analysis, the court views the
facts in the light most favorable to the non-moving party.

4

"After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." <u>Pignataro v. Port Auth. of N.Y. & N.J.</u>, 593 F.3d 265, 268 (3d Cir. 2010) (citing <u>Reliance Ins. Co. v. Moessner</u>, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250.

B.   <u>The Applicable Law</u>

The parties appear to assume that Defendants' legal arguments regarding "judicial estoppel" and the "real party in interest" are matters of federal law that should be decided in the first instance by the Court. The Court agrees with this approach. <u>See</u> <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>, 81 F.3d 355, 358 (3d Cir. 1996).[3] In matters of federal law, the MDL transferee court applies the law of the circuit where it sits, which in this case is the law of the U.S. Court of Appeals for the Third Circuit. <u>Various Plaintiffs v. Various Defendants</u>

---

[3]      "A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose." <u>Ryan Operations</u>, 81 F.3d at 358 n.2.

("Oil Field Cases"), 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009) (Robreno, J.). Therefore, the Court will apply Third Circuit law in deciding the issues raised by Defendants' motion.

## III. THE PARTIES' ARGUMENTS

### A.   Judicial Estoppel (Non-Malignancy Claims)

Defendants contend that Plaintiff's non-malignancy claims are barred on grounds of judicial estoppel. Specifically, they contend that he took irreconcilably inconsistent positions in his bankruptcy proceeding and the instant proceeding. Defendants state that Plaintiff concealed the existence of his non-malignancy asbestos claims when filing for bankruptcy by not reporting them as pending or likely claims on Schedule B ("Personal Property"), while simultaneously asserting such claims in the current (and then-already-pending) asbestos action. They further assert that a finding of bad faith is warranted because Plaintiff had knowledge of the non-malignancy asbestos claims at the time that he filed for bankruptcy and had a motive to conceal the claims from the Bankruptcy Court (i.e., to keep any proceeds of the claims while reducing the amount of assets available for distribution amongst the creditors - a motive Defendants assert is common to nearly all debtors in bankruptcy).

Finally, Defendants contend that no lesser remedy is warranted because the sanction of barring the non-malignancy asbestos claims is necessary to (1) keep Plaintiff from profiting from the omission and (2) preserve the integrity of the bankruptcy proceedings.

Plaintiff contends that the non-malignancy asbestos claims are not barred on grounds of judicial estoppel. First, Plaintiff contends that he did not take inconsistent positions between his bankruptcy filing and the present asbestos action because at the time of his bankruptcy filing – and throughout the entire duration of that action – his non-malignancy asbestos claims were dismissed, such that he was not required to list them as an asset in his bankruptcy action. Moreover, Plaintiff argues that even if he should have identified the non-malignancy asbestos claims, the failure to do so was a good faith mistake such that judicial estoppel is not warranted.

Second, Plaintiff asserts that Defendants bear the burden of establishing bad faith, but have no evidence that he acted in bad faith when he did not list his non-malignancy asbestos claims as an asset in his bankruptcy filing. Additionally, Plaintiff asserts that bad faith cannot be proven in light of the fact that those claims were dismissed long

before he filed for bankruptcy and were only reinstated by the
MDL Court long after the bankruptcy was closed.

     B.   Real Party in Interest/Standing

        1.   Non-Malignancy Claims (Initial Claims)

In the alternative (as to the non-malignancy claims
initially asserted in Plaintiff's asbestos action), Defendants
contend that Plaintiff has no right to pursue the non-malignancy
claims because the claims no longer belong to him and instead
belong to the bankruptcy trustee. Specifically, Defendants argue
that, even though Plaintiff did not report these asbestos claims
as assets in the bankruptcy filing, as required by 11 U.S.C. §
541(a)(1), those claims automatically became part of the
bankruptcy estate when the bankruptcy petition was filed. As a
result, they assert that only the bankruptcy trustee can
administer the claims.

Defendants also argue that, because Plaintiff did not
reveal the non-malignancy asbestos claims, such that they were
never properly scheduled as assets, the trustees were incapable
of passing those claims back to him through abandonment of any
remaining assets not administered (as would normally happen
pursuant to 11 U.S.C. § 554). As such, Defendants assert that,
even though the bankruptcy action has closed, the rights to the

non-malignancy asbestos claims did not revert back to Plaintiff upon that closure and instead remain with the trustee, such that Plaintiff may not now pursue them.

Plaintiff asserts that, because the non-malignancy asbestos claims were dismissed during the entire pendency of the bankruptcy action, they were never assets of the bankruptcy estate – regardless of whether or not he disclosed them. In short, Plaintiff argues that the bankruptcy estate could not have an asset that was not in existence at the time of the bankruptcy.

### 2.   Malignancy Claims (Post-Petition Claims)

In their reply brief (as to the malignancy claims that arose post-petition), Defendants assert that Plaintiff's claims for malignant asbestos-related disease (based upon his post-petition diagnosis of cancer) are property of the estate, such that Plaintiff also lacks standing to pursue these claims – despite the fact that the diagnosis of cancer did not occur until _after_ Plaintiff's bankruptcy action was filed (and closed) – because those claims are sufficiently rooted in his pre-bankruptcy past to constitute property of the estate.[4]

---

[4]      In support of this contention, Defendants rely primarily upon Segal v. Rochelle, 382 U.S. 375, 380 (1966), and In re Richards, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000)(involving a post-petition asbestos claim). In addition,

Specifically, Defendants argue that, under Segal, any new claim that is "sufficiently rooted in the pre-bankruptcy past" should be included in the debtor's bankruptcy estate, 382 U.S. at 380, and that, since the asbestos exposures (and the non-malignant asbestos injury) arose pre-bankruptcy, any claims for injuries arising therefrom (such as Plaintiff's cancer claims) should be considered part of the bankruptcy estate because they are "sufficiently rooted in the pre-bankruptcy past."

Plaintiff asserts that his claims for malignant asbestos-related disease (based upon his post-petition diagnosis of cancer) are not property of the estate – and never were – because they did not even arise until after he was discharged from bankruptcy. In support of this argument, Plaintiff cites to this Court's decision, Nelson v. A.W. Chesterton, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.), which held that maritime law follows the "two-disease rule" such that the plaintiff's cancer diagnosis was a second and separate malignant disease, which gave rise to a second and separate cause of action distinct from the cause of action on which his asbestos

---

Defendants also cite to a number of cases that did not involve an asbestos claim: In re Webb, 484 B.R. 501 (Bankr. M.D. Ga. 2012); In re Salander, 450 B.R. 37, 46 (Bankr. S.D.N.Y. 2011); In re Strada Design Assocs., Inc., 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005); and In re Patterson, 2008 WL 2276961 (Bankr. N.D. Ohio June 3, 2008).

action was initially filed. As such, Plaintiff contends that, even if the Court should determine that his non-malignancy claims are property of the bankruptcy estate that he is now barred from pursuing, the post-petition malignancy claims (for cancer) are not property of the estate (and never were), such that Plaintiff may still pursue those claims free and clear of any debts not fully paid to creditors in the bankruptcy action.

## IV. DISCUSSION

The bankruptcy code requires debtors seeking benefits under its terms to schedule, for the benefit of creditors, all his or her interests and property rights. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988); 11 U.S.C. §§ 521, 1125. This duty of disclosure includes not only pending lawsuits or lawsuits the debtor intends to bring, but even any potential and likely causes of action. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 322 (3d Cir. 2003); Oneida, 848 F.2d at 417 (providing that "[i]t has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy contest"). However, debtors are not required to list "every 'hypothetical,' 'tenuous,' or 'fanciful' claim on an asset disclosure form." Freedom Med., Inc. v. Gillespie, No. 06-3195,

2013 WL 2292023, at *23 (E.D. Pa. May 23, 2013) (quoting Krystal
Cadillac, 337 F.3d at 323).

Once the debtor has filed his bankruptcy petition, the
bankruptcy estate - which in a Chapter 7 case is controlled by
the trustee - "encompasses everything that the debtor owns upon
filing a petition, as well as any derivative rights, such as
property interests the estate acquires after the case
commences." In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000).
"While a bankruptcy case is pending, it is the trustee, and not
the debtor, who has the capacity to pursue the debtor's claims."
In re Kane, 628 F.3d at 637 (internal quotation marks and
citations omitted). Additionally, "[p]ursuant to 11 U.S.C. §
554(d), a cause of action which a debtor fails to schedule,
remains property of the estate because it was not abandoned and
not administered." Allston-Wilson v. Philadelphia Newspapers,
Inc., No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20,
2006); see also In re Kane, 628 F.3d at 637 ("an asset must be
properly scheduled in order to pass to the debtor through
abandonment under 11 U.S.C. § 554") (quoting Hutchins v. IRS, 67
F.3d 40, 43 (3d Cir. 1995)).

Typically, the only interests that a bankruptcy estate
owns are those that a plaintiff has at the time the petition is
filed. In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000)

(concluding that the bankruptcy "estate encompasses everything that the debtor owns upon filing a petition") (emphasis added); 11 U.S.C. § 541(a)(1). However, any new, post-petition interest (such as a legal claim) that is "sufficiently rooted in the pre-bankruptcy past" can also constitute part of the debtor's bankruptcy estate. See Segal v. Rochelle, 382 U.S. 375 (1966).

Judicial estoppel is a "doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) (internal quotation marks and citations omitted). At the heart of judicial estoppel is the idea that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Id. (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981), p. 782). However, this doctrine is "not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." Id. It "should only be applied to avoid a miscarriage of justice" and "is only appropriate when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." Krystal Cadillac, 337 F.3d at 319, 324

13

(internal quotation marks and citations omitted). The "doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court.'" Ryan Operations, 81 F.3d at 362 (quoting Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir. 1980)). "It is a fact-specific, equitable doctrine, applied at courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir. 2010).

The Third Circuit Court of Appeals has formulated this test to help determine if judicial estoppel is appropriate:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith – i.e., with intent to play fast and loose with the court." Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

Krystal Cadillac, 337 F.3d at 319-20 (quoting Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir. 2001)). The Third Circuit has further concluded that a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." Id. at 321 (citing Oneida Motor Freight, 848 F.2d at

416-18); <u>Ryan Operations</u>, 81 F.3d at 363. However, the application of this inference does not arise "from the mere fact of nondisclosure." <u>Ryan Operations</u>, 81 F.3d at 364. Third Circuit precedent makes clear that a court should conduct an individualized factual assessment regarding, <u>inter alia</u>, knowledge and motive of the debtor surrounding disclosure of assets in a bankruptcy action. <u>See</u> <u>id.</u> at 363-64 (concluding that the inference did not apply where the creditors were most likely unaffected by the failure to disclose, the debtor received no benefit from its non-disclosure, and that there was no evidence that the debtor sought to conceal the claims deliberately); <u>Krystal Cadillac</u>, 337 F.3d at 321-324 (applying estoppel after analyzing the facts regarding knowledge and motive).

## V.    ANALYSIS

### A.    <u>Judicial Estoppel (Non-Malignancy Claims)</u>

Defendants contend that, because the dismissal of Plaintiff's asbestos claims was merely administrative (such that the claims could be reinstated by Plaintiff or the MDL Court at some point in the future), the claims were assets whose omission from Schedule B of the bankruptcy action constituted an inconsistent position between the two lawsuits and creates an

inference of bad faith. Plaintiff contends that because the claims had been in a dismissed stage for a while at the time of the bankruptcy filing, they were not in essence assets and did not need to be disclosed – and that, if they did constitute assets that should have been disclosed, the failure to disclose them was a good faith mistake.

      i.    Step One: Has Plaintiff Taken Two Irreconcilably Inconsistent Positions?

It is undisputed that Plaintiff did not list his non-malignancy asbestos claims (or any other legal claims) as assets in his bankruptcy filing. His duty of disclosure included identifying pending lawsuits, lawsuits he intended to bring, and any potential and likely lawsuits. See Krystal Cadillac-Oldsmobile, 337 F.3d at 322. By failing to include his non-malignancy asbestos claims as an asset in his bankruptcy filings, Plaintiff initially represented to the Bankruptcy Court that such an asset did not exist. Now, in the present action, Plaintiff is pursuing those same claims that he represented did not exist. Accordingly, the two positions are irreconcilably inconsistent. See id. at 319-320.

      ii.    Step Two: Did Plaintiff Change His Position In Bad Faith

16

It is difficult to divine, through a prism of twenty years later, the exact nature and scope of the "administrative dismissals." See Bartel v. Various Defendants, 965 F. Supp. 2d 612, 617 (E.D. Pa. 2013) (Robreno, J.) (explaining the difficulty in attempting to discern orders that were entered over twenty years ago in the context of personal jurisdiction in the MARDOC cases).[5] While Judge Weiner's orders appear to invite reinstatement subject to certain conditions, none of the cases that were administratively dismissed was ever reinstated from 1997 to 2009, until this Court, sua sponte, did so en masse. That a layman would have had the foresight to know in 2002 when he filed for Chapter 7 bankruptcy, that nine years later a new presiding Judge of the MDL would reopen his asbestos case, albeit seventeen years after it was filed, would have required unrealistic power of prescience. Rather, for all practical purposes, the entire MARDOC litigation in the MDL Court - including Plaintiff's case - was in a "black hole," uncertain to ever emerge again. See Hon. Eduardo C. Robreno, The Federal

---

[5]      "Now, some 25 years later, the Court, with the assistance of counsel, is called upon to divine the meaning of less-than-pellucid orders entered long ago by prior courts, and to disentangle the parties from a web of procedural knots that have thwarted the progress of this litigation." Bartel, 965 F. Supp. 2d at 614.

Asbestos Product Liability Multidistrict Litigation (MDL-875):

Black Hole or New Paradigm?, 23 Widener L. J. 97, 126 (2013).

Under these circumstances, the Court finds that the failure to disclose the non-malignancy asbestos claims was not in bad faith, nor an attempt to play "fast and loose" with the Bankruptcy Court. See Krystal Cadillac, 337 F.3d at 319-20.[6] Accordingly, the Court does not find that Plaintiff changed his position "in bad faith" such that it warrants the application of judicial estoppel. See Ryan Operations, 81 F.3d at 363.[7] Accordingly, Defendants' motion for summary judgment on grounds of judicial estoppel will be denied. See Anderson, 477 U.S. at 248-50.

---

[6] While the Third Circuit has said that, a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose," Krystal Cadillac, 337 F.3d at 321, the Third Circuit has also noted that an inference of bad faith does not always arise from "the mere fact of non-disclosure." Ryan Operations, 81 F.3d at 364. Under the facts of this case, the Court need not decide whether there was a lack of bad faith on the part of Mr. Nelson, or whether the inference of bad faith was rebutted, in that in either event, the same result is obtained.

[7] Additionally, the Court has reviewed the bankruptcy petition filed by Mr. Nelson, see ECF No. 94-2, and concludes that, to the extent the law generally requires disclosures of the type of claims that were pending at the time of the bankruptcy filing, an omission of those claims may very well have been based on a good faith mistake of what was required by the documents, or a simple incorrect assessment of the viability of his long-dormant claims. See Ryan Operations, 81 F.3d at 362.

B.    <u>Real Party in Interest/Standing</u>

    1.    <u>Non-Malignancy Claims (Initial Claims)</u>

Defendants next contend that, despite Plaintiff's failure to list the non-malignancy asbestos claims on his bankruptcy petition, the claims now belong to the bankruptcy trustee (pursuant to 11 U.S.C. § 541(a)(1)) such that Plaintiff has no right to pursue them. They assert that, because Plaintiff did not properly schedule those claims as assets, the trustees were incapable of passing those claims back to him through abandonment of any remaining and unpursued assets as would normally happen pursuant to 11 U.S.C. § 554. Here, the Defendants' position has some initial merit.

It is true that, once a debtor has filed his bankruptcy petition, the bankruptcy estate, which is controlled by the trustee, "encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences," <u>In re O'Dowd</u>, 233 F.3d 197, 202 (3d Cir. 2000), and that "it is the trustee, and not the debtor, who has the capacity to pursue the debtor's claims." <u>In re Kane</u>, 628 F.3d at 637 (internal quotation marks and citations omitted). It is also true that, "[p]ursuant to 11 U.S.C. § 554(d), a cause of action,

which a debtor fails to schedule, remains property of the estate because it was not abandoned and not administered." Allston-Wilson, No. 05-4056, 2006 WL 1050281, at *1; In re Kane, 628 F.3d at 637 (quoting Hutchins, 67 F.3d at 43).

In the instant case, Plaintiff erred by failing to disclose his administratively dismissed non-malignancy asbestos claims when he filed his bankruptcy petition. While the Court has held that this error was not in bad faith and thus not barred by judicial estoppel, these claims are nonetheless part of the bankruptcy estate as they were not only potential claims, but were realized claims technically held in abeyance by the Court, and thus needed to be disclosed. Under these circumstances, the claims remain part of the bankruptcy estate and the trustee remains the real party in interest for such claims, even after the bankruptcy was closed. See Killmeyer v. Oglebay Norton Co., 817 F. Supp. 2d 681, 689 (W.D. Pa. 2011) (granting the trustee's motion to substitute for the plaintiff as the real party in interest since the debtor's unscheduled pre-petition claim could only be administered by the trustee); Saellam v. Norfolk S. Corp., No. 06-123, 2007 WL 1653737, at *4 (W.D. Pa. June 6, 2007) (concluding that "[b]ecause Plaintiff's cause of action is part of the bankruptcy estate, and has not been abandoned by the trustee, I hold Plaintiff is not the real

party in interest and that only the trustee in bankruptcy, as sole representative of Plaintiff's estate, has standing to pursue the instant lawsuit"); Allston-Wilson, 2006 WL 1050281, at *1 (holding that where it was undisputed that the plaintiffs cause of action arose before her bankruptcy and that she failed to list the claim on her bankruptcy schedule, only the trustee could pursue the claim); see also Biesek v. Soo Line R. Co., 440 F.3d 410, 413-14 (7th Cir. 2006) (concluding that the trustee was the real party in interest for plaintiff's pre-bankruptcy claim which he failed to list as a bankruptcy asset and upholding the dismissal of the case since the claim did not belong to the plaintiff and the trustee had not sought to intervene).

Having held that the trustee, and not Plaintiff, is the real party in interest of the instant non-malignancy asbestos claims, the Court must determine the appropriate remedy. Given that the claims belong to the estate and that, therefore, distributions of any recovery by the trustee should be made in accordance with the priorities set forth in the Bankruptcy Code, the trustee shall be given the opportunity to decide, in the first instance, whether he/she will prosecute the non-malignancy claims.

The Court does not underestimate the practical difficulties involved. The bankruptcy case is now closed in the Bankruptcy Court for the Southern District of Alabama, and the identity and whereabouts of the trustee are unknown to this Court. To expedite the process of putting the trustee on notice of the claims, the Court will direct the Clerk of this Court to (1) create a copy of this memorandum and accompanying order to be filed on the docket of Plaintiff's bankruptcy case in the Bankruptcy Court for the Southern District of Alabama (No. 02-bk-12742-MAM); (2) ascertain the identity of the trustee; and (3) have served upon the trustee a copy of said memorandum and order at his/her last known address. The trustee will have sixty (60) days from the date of the filing of the order on the docket of the Bankruptcy Court to seek to reopen the Bankruptcy action and to advise this Court that he/she intends to prosecute the instant non-malignancy asbestos claims.[8] In such event, the Court will stay the instant proceedings while the bankruptcy estate is reopened (providing monthly updates to the Court on the status of the petition to reopen). Once the bankruptcy estate is reopened, the trustee will have thirty (30) days from the date

---

[8] The trustee will be ordered to provide a signed letter certifying his/her (a) filing of a petition with the Bankruptcy Court to reopen Plaintiff's bankruptcy proceedings and (b) intention to be added as party-plaintiff in the instant case (with respect to the non-malignancy claims only).

of the reopening of the estate to move this Court to have himself/herself added as the party-plaintiff in this case (with respect to the non-malignancy claims only, with Plaintiff continuing as the named plaintiff with respect to the malignancy claims).

In the event that (1) the trustee fails to advise this Court within sixty (60) days from the date the order is filed on the docket of the Bankruptcy Court that he/she intends to proceed with the instant claims,[9] (2) he/she declines to do so, (3) he/she fails to provide a monthly status update, or (4)

---

[9] It is not clear whether the trustee's failure to respond to the Court's order would constitute an express or implied abandonment of the instant claims under 11 U.S.C. § 554. See Mele v. First Colony Life Ins., Co., 127 B.R. 82, 85-86 (D.D.C. 1991) (noting that the mere fact the trustee was notified of the pending lawsuit, but failed to administer it, would not necessarily mandate a finding of implied abandonment). Importantly, however, the party seeking to demonstrate abandonment bears the burden of persuasion. Hanover Ins. Co. v. Tyco Industries, Inc., 500 F.2d 654, 657 (3d Cir. 1974). In bankruptcy proceedings, the trustee's position is similar to that of a fiduciary to both the debtor and creditors. Under the bankruptcy code, the trustee must "investigate the financial affairs of the debtor," 11 U.S.C. § 704(a)(4), and "collect and reduce to money the property of the estate," 11 U.S.C. § 704(a)(1). Moreover, the trustee "has the duty to maximize the value of the estate," Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 353 (1985), and "in so doing is bound to be vigilant and attentive in advancing the estate's interests." In re Martin, 91 F.3d 389, 394 (3d Cir. 1996). "In sum, it is the trustee's duty to both the debtor and the creditor to realize from the estate all that is possible for distribution among the creditors." Id. (citing 4 Collier, Bankruptcy ¶ 704.01 (15th ed.)).

he/she fails to move to be added as party-plaintiff (with respect to the non-malignancy claims only) within thirty (30) days of the reopening of the bankruptcy action, the Court will give Plaintiff an additional thirty (30) days[10] to provide this Court with notice that he intends to (1) pursue only the malignancy claims, or (2) petition the Bankruptcy Court for the Southern District of Alabama to reopen the bankruptcy proceedings and move in that court to compel abandonment of the instant non-malignancy claims. See 11 U.S.C. § 554(b).[11]

If notice is not received from either the trustee or Plaintiff in the specified timeframe, the Court will dismiss Plaintiff's case for failure to substitute the real party in interest. See Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable

---

[10]    This would be ninety (90) days from the date the memorandum and order are filed on the Bankruptcy Court's docket (for events pursuant to (1) or (2)); or thirty (30) days from the date of the pertinent failure pursuant to (3) or (4).

[11]    In the event that Plaintiff chooses to pursue the non-malignancy claims, he will be ordered to provide a signed letter certifying his intention to petition the Bankruptcy Court to reopen his bankruptcy proceedings and move the Bankruptcy Court to compel abandonment of those claims. The Bankruptcy Court for the Southern District of Alabama is the court in the best position to provide the proper parties (including any potential creditors) with sufficient notice of Plaintiff's motion to compel abandonment of the instant non-malignancy claims. See 11 U.S.C. § 554(b).

time has been allowed for the real party in interest to ratify, join, or be substituted."). At this time, however, and under these circumstances, summary judgment in favor of Defendants on grounds of the real party in interest/standing will be denied without prejudice as to Plaintiff's <u>non-malignancy</u> claims. <u>Anderson</u>, 477 U.S. at 248-50.

    2.   <u>Malignancy Claims (Post-Petition Claims)</u>

    Defendants assert that Plaintiff's claims for malignant asbestos-related disease (based upon his post-petition diagnosis of cancer) are also property of the estate,[12] such that Plaintiff also lacks standing to pursue these claims – despite the fact that the diagnosis did not occur until <u>after</u> Plaintiff had been discharged from bankruptcy – because those claims are sufficiently rooted in his pre-bankruptcy past to constitute property of the estate.

    Because Plaintiff's cancer was not diagnosed until after he was discharged from bankruptcy (and there is no

---

[12]    This Court has ruled that, under maritime law, a Plaintiff's non-malignant asbestos related disease and subsequent malignant asbestos-related disease give rise to two separate and distinct causes of action. <u>See</u> <u>Nelson v. A.W. Chesterton</u>, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). As such the bankruptcy estate's ownership of a non-malignancy claim is entirely separate and distinct from its potential ownership of a second and subsequent malignancy claim. Defendants appear to acknowledge and accept both of these principles.

25

evidence in the record that he knew of his cancer prior to his discharge from bankruptcy), it is clear that he was not required to schedule his malignancy asbestos claims in the bankruptcy action. The question then, with respect to the post-petition malignancy claims, is whether the claims were nonetheless property of the bankruptcy estate by operation of law.

A bankruptcy estate typically owns only those interests that a plaintiff has at the time a petition is filed, In re O'Dowd, 233 F.3d at 202 , and 11 U.S.C. § 541(a)(1). However, the Supreme Court has held that, when a cause of action arises after the filing of a bankruptcy petition, the claim belongs to the bankruptcy estate only if it is "sufficiently rooted in the pre-bankruptcy past." Segal, 382 U.S. at 380. Therefore, the Court must determine whether Plaintiff's malignancy claims were sufficiently rooted in the pre-bankruptcy past. Id. In doing so, it will consider the cases relied upon by the Thompson Hine Shipowners to support their contention that the malignancy claims are sufficiently rooted in the pre-bankruptcy estate to constitute property of the estate.

In Segal, the Supreme Court concluded that a tax refund originating from a tax return filed before the bankruptcy petition was property of the estate, even though the refund was not payable until after the petition was filed. Segal, 382 U.S.

26

at 379-82. In explaining its rationale in <u>Segal</u>, the Supreme
Court stated:

> The main thrust of [the relevant section of the
> bankruptcy code] is to secure for creditors everything
> of value the bankrupt may possess in alienable or
> leviable form when he files his petition. To this end
> the term "property" has been construed most generously
> and an interest is not outside its reach because it is
> novel or contingent or because enjoyment must be
> postponed. <u>E.g.</u>, <u>Horton v. Moore,</u> 6 Cir., 110 F.2d 189
> (contingent, postponed interest in a trust);
> <u>Kleinschmidt v. Schroeter</u>, 9 Cir., 94 F.2d 707
> (limited interest in future profits of a joint
> venture); <u>see</u> 3 Remington, <u>Bankruptcy</u> ss 1177—1269
> (Henderson ed. 1957). However, limitations on the term
> do grow out of other purposes of the Act; **one purpose
> which is highly prominent and is relevant in this case
> is to leave the bankrupt free after the date of his
> petition to accumulate new wealth in the future.**

> .     .     .

> Temporally, two key **elements pointing toward
> realization of a refund existed at the time these
> bankruptcy petitions were filed**: taxes had been paid
> on net income within the past three years, and the
> year of bankruptcy at that point exhibited a net
> operating loss.

382 U.S. at 379-80 (emphasis added). The facts of <u>Segal</u> are
distinguishable from those of the present situation because,
unlike the expected tax refund in <u>Segal</u>, there is no evidence
that Mr. Nelson knew of his cancer claim at the time he filed
for bankruptcy. As the Supreme Court noted in <u>Segal</u>, whether an
asset is "property" of the bankruptcy estate must be determined
by the purposes behind the Bankruptcy Act, and one of the

primary purposes of allowing Chapter 7 bankruptcy filings and limiting the forfeiture of assets to those existing at the time of the filing is to allow the bankrupt to start afresh and accumulate new wealth in the future. In short, the rationale of Segal (and the bankruptcy law interpreted by the Supreme Court therein) does not support a decision to preclude Plaintiff from obtaining a financial recovery on a claim that did not exist at the time he filed for bankruptcy. Id. This is true despite the fact that the alleged asbestos exposure giving rise to the claim occurred long before that bankruptcy petition was filed – a factual scenario considered by a bankruptcy court in Michigan in In re Richards, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000), upon which Defendants rely.

In re Richards involved an asbestos claim for an illness that was diagnosed after a debtor had filed for bankruptcy, and while the bankruptcy action was still pending. The court held (in accord with Segal) that, "in determining whether a claim is property of the bankruptcy estate, the test is not the date that the claim accrues under state law" but "whether the claim is 'sufficiently rooted in the pre-bankruptcy past'." 249 B.R. at 861. The court concluded that the debtor's asbestos-related cancer claim was sufficiently rooted in his pre-petition past and should therefore be considered part of the

28

bankruptcy estate based on the two facts that: (1) "All of the allegedly wrongful conduct giving rise to the debtor's claim occurred prepetition," and (2) "although the diagnosis was made seven months after the petition was filed, that timing appears to have been more a result of happenstance than of medical necessity. It appears likely that both the <u>onset of the debtor's disease</u> and a <u>greater portion of its progress</u> occurred before he filed his petition." <u>Id.</u> (emphasis added). The Court notes that <u>In re Richards</u> is not binding on this court and, in addition, involved claims that were governed by Michigan law (under which the causes of action accrued when the plaintiff "knew or should have known" of his asbestos-related illness, <u>id.</u>) rather than maritime law (under which an asbestos cause of action accrues when the illness manifests itself, or when the plaintiff has knowledge of the injury and its cause, <u>Nelson</u>, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011)).

The bankruptcy court in <u>In re Richards</u> found that the onset of the debtor's disease and most of its progress had occurred prior to the filing of the bankruptcy petition (as the disease was diagnosed only seven months after the petition had been filed — and while the petition was still pending). In the case at hand, although Mr. Nelson was diagnosed with cancer only eight months after his bankruptcy petition was filed, the

diagnosis did not come until _after_ the bankruptcy action was already closed - and there is no evidence in the record that he knew of his cancer, or experienced any symptoms of that illness prior to the date on which the bankruptcy petition was filed (or the date on which he was discharged from bankruptcy). As such, unlike _In re Richards_ (where an asbestos claim accrued under the applicable law when a plaintiff "should have" known of his illness), it cannot be concluded that Mr. Nelson's malignancy asbestos claim accrued (under maritime law) prior to the filing of his bankruptcy petition. Moreover, without evidence in the record to the contrary, the Court is unwilling to conclude that the onset of Mr. Nelson's cancer – or any of its progress - occurred prior to the date of the filing of his bankruptcy petition. This is because mere pre-petition exposure to asbestos did not necessarily result in cancer. It was not until that illness actually manifest itself that the exposure gave rise to a claim – and an interest over which the bankruptcy trustee could potentially have ownership. Therefore, even when applying the rationale of _In re Richards_, the Court must conclude that although the alleged asbestos exposure giving rise to Mr. Nelson's cancer occurred prior to the filing of his bankruptcy petition, the post-petition malignancy claims are not

"sufficiently rooted" in his pre-bankruptcy past to be deemed property of the bankruptcy estate.

Defendants also cite to a number of cases that did not involve an asbestos claim. In re Webb is factually analogous insofar as it involved a claim based upon a latent physical injury. 484 B.R. 501 (Bankr. M.D. Ga. 2012). In that case, a debtor received a post-petition class action settlement for congestive heart failure he was believed to have suffered as a result of having taken a particular medication years earlier. Although the congestive heart failure occurred two years prior to the filing of the bankruptcy petition, the debtor did not know that there was any link between the medication and congestive heart failure until well after his bankruptcy action had been filed and closed. Upon the bankruptcy trustee's petitioning for a reopening of the bankruptcy action to recover this class action settlement from the debtor in order to administer it as part of the bankruptcy estate, the court concluded that the product liability claim was property of the bankruptcy estate despite the fact that the debtor did not become aware of the claim until after his bankruptcy action was filed (and closed). Importantly, however, the court's decision turned entirely on its reluctant acknowledgment that, under the law applicable therein, the "discovery rule" did not apply to

the debtor's product liability cause of action. Specifically,

that court explained:

> **But after reconsidering Alvarez, the Court concludes**
> **that the inapplicability of the discovery rule was**
> **necessary to the Eleventh Circuit's holding.** The
> alleged malpractice was advising and filing a Chapter
> 7 bankruptcy instead of a Chapter 11 bankruptcy and
> failing to convert, resulting in the trustee selling
> assets at a price disagreeable to the debtor. See In
> re Alvarez, 224 F.3d at 1275; In re Alvarez, 228 B.R.
> 762, 763 (Bankr. M.D. Fla. 1998). The fight over
> ownership of the claim (malpractice arising from
> mishandling a bankruptcy case) occurred in the very
> bankruptcy proceeding that was the subject of the
> malpractice claim. Under these facts, the debtor
> necessarily discovered the injury and cause post-
> petition. **The discovery rule not applying is essential**
> **for the holding** — that the cause of action accrued as
> of the filing and thus was property of the estate —
> because there is no logical way the discovery rule
> could apply and the Court's holding stay the same.
>
> **Because In re Alvarez is binding on this Court, and**
> **thus all necessary elements of that decision are**
> **binding on this Court, the Court can only conclude**
> **that the discovery rule does not apply to the present**
> **circumstances. The Court will look to whether the**
> **elements of the product liability claim occurred**
> **before or after filing.** It is undisputed that
> everything, except for knowledge of cause, occurred
> prepetition. The Court thus holds that the product
> liability claim accrued prepetition and is estate
> property.

484 B.R. at 504-05 (emphasis added). Significantly, however,

maritime law recognizes the "discovery rule" in determining the

accrual of an asbestos-related claim. See Nelson, 2011 WL

6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). For this reason,

the rationale of In re Webb is inapplicable to the case at hand, which is governed by maritime law (and under which, as explained earlier herein, Mr. Nelson's claim did not accrue prior to the filing of his petition and is not sufficiently rooted in his pre-bankruptcy past to constitute property of the bankruptcy estate).

In re Salander involved a debtor's effort to pursue a claim against one of her creditors after her bankruptcy action was closed. 450 B.R. 37 (Bankr. S.D.N.Y. 2011). The court held that the claim was property of the bankruptcy estate for either or both of two reasons: First, the court determined that, under New York law, her claim had accrued pre-petition (because she knew of the alleged forgery giving rise to her claim prior to the filing of her petition) and was, therefore, property of the bankruptcy estate. Id. at 46. In this regard, this case is inapplicable to Mr. Nelson's situation, which is governed by maritime law, and for which there is no evidence of accrual of his cancer claim until after the bankruptcy action was filed and closed. See Nelson, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). Second, the court found (without much explanation) that, even if the debtor had not discovered the extent of the alleged forgery at issue, the actions giving rise to her claims (alleged fraudulent signing of documents) occurred

prior to the petition and were, therefore, "sufficiently rooted in the pre-bankruptcy past." The factual scenario therein is distinguishable from that of Mr. Nelson's insofar as the fraud (and accompanying harm) had occurred and existed pre-petition regardless of whether and when they were discovered by Mrs. Salander. In contrast, Mr. Nelson's pre-petition asbestos exposure did not necessarily result in an injury at all and, instead, only resulted in injury upon the later manifestation of his illness. As such, based upon the evidence in the record, the crucial element of development of his asbestos illness occurred post-petition. Therefore, the rationale of In re Salander does not lead to a conclusion that Mr. Nelson's asbestos claims are property of the bankruptcy estate – despite that fact that the alleged asbestos exposure giving rise to them occurred prior to the filing of the bankruptcy petition.

In re Strada Design Assocs., Inc. followed the same rationale as In re Salander and its analysis explicitly turned on the decision that formed the basis of In re Webb (Alvarez, 224 F.3d 1273). 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005). Thus, for the same reasons that In re Salander and In re Webb did not lead to the conclusion that Mr. Nelson's asbestos claims are property of the bankruptcy estate, In re Strada does not either.

In re Patterson involved three claims that a trustee
sought to pursue on behalf of the bankruptcy estate. 2008 WL
2276961 (Bankr. N.D. Ohio June 3, 2008). In that case, the court
concluded that the claims belonged to the debtor (and not to the
estate) because, "[t]he three claims brought by the Trustee stem
entirely from a single, post-petition event [because] all the
elements necessary to sustain the Trustee's three claims arose
post-petition." Id. at *5. As such, the facts of the case are
entirely different from those of Mr. Nelson (whose asbestos
exposure occurred pre-petition, while his cancer diagnosis
occurred post-petition) and have no bearing on the case at hand.

In short, none of the cases relied upon by Defendants
support the conclusion that Plaintiff's malignancy asbestos
claims are property of the bankruptcy estate. Applying the
rationale of Segal, the Court concludes that, given the facts of
the present case, and the standard set forth by maritime law for
determining accrual of an asbestos cause of action (including,
specifically, its utilization of the "discovery rule"),
Plaintiff's malignancy asbestos claims are not "sufficiently
rooted in his pre-bankruptcy past to constitute property of the
bankruptcy estate (pursuant to the exception to 11 U.S.C. §
541(a)(1) set forth in In re O'Dowd). Instead, the general rule
of § 541(a)(1), as discussed in In re O'Dowd, 233 F.3d at 202

(limiting bankruptcy estate property to that in existence at the time of the filing of the petition), is applicable. Plaintiff's malignancy asbestos claims (which did not accrue until after the bankruptcy petition was filed and after Plaintiff was discharged from bankruptcy) are, therefore, not property of the bankruptcy trustee (and not subject to pursuit by creditors in the bankruptcy action). Accordingly, Defendants' motion for summary judgment on grounds of the real party in interest/standing will be denied as to Plaintiff's post-petition <u>malignancy</u> claims. <u>Anderson</u>, 477 U.S. at 248-50.

**VI.  CONCLUSION**

For all of the reasons stated above, Defendants' motion for summary judgment will be denied.[13]

---

[13]     With respect to Plaintiff's initial <u>non-malignancy</u> claims: Defendants' motion for summary judgment on grounds of judicial estoppel will be denied; Defendants' motion for summary judgment on grounds that the bankruptcy trustee is the real party-in-interest with ownership of these claims will be denied without prejudice (pending proof that the trustee has sought to reopen the bankruptcy action).

With respect to Plaintiff's post-petition <u>malignancy</u> claims, Defendants' motion for summary judgment will be denied.